PARIS & G. N. R. CO. v. BOSTON et al.†

(Court of Civil Appeals of Texas. Texarkana. Dec. 21, 1911. Rehearing Denied Jan. 11, 1912.)

1. MASTER AND SERVANT (§ 278*)—INJURY TO SERVANT—NEGLIGENCE—EVIDENCE.

In an action for the death of a switchman, while attempting to adjust a coupler on a car, evidence *held* to support a finding of negligence of the engineer of the switch engine in striking another car with such force as to cause it to back against decedent without warning.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 954–972; Dec. Dig. § 278.*]

2. MASTER AND SERVANT (§ 281*)—INJURY TO SERVANT—CONTRIBUTORY NEGLIGENCE—EVIDENCE.

In an action for the death of a switchman, while attempting to adjust a coupler on a car, evidence *held* to justify a finding that he was free from contributory negligence.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 987–996; Dec. Dig. § 281.*]

3. APPEAL AND ERROR (§ 547*)—QUESTIONS REVIEWABLE—BILL OF EXCEPTIONS.

Refusal to grant a motion to remove a cause from a state court to the federal Circuit Court is not reviewable in the absence of a bill of exceptions.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2427–2432; Dec. Dig. § 547.*]

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

† Writ of error denied by Supreme Court.

**4. REMOVAL OF CAUSES (§ 81*)—APPLICATION —REQUISITES.**

A petition for the removal of a cause from a state to a federal court, which is not accompanied by a bond and which is not presented until two terms of court have passed, is properly denied, though the suit is under the federal liability law, which confers concurrent jurisdiction on state and federal courts in cases arising under it.

[Ed. Note.—For other cases, see Removal of Causes, Cent. Dig. §§ 137, 138; Dec. Dig. § 81.*]

**5. APPEAL AND ERROR (§ 1036*)—HARMLESS ERROR—ERRONEOUS RULINGS ON QUESTION OF PARTIES.**

Where the petition, in an action against a railroad company for the death of a servant brought by his widow and minor children, stated a cause of action for common-law negligence and a cause of action under the federal liability law, but only the common-law negligence was submitted, the error, if any, in overruling an exception for defect of parties, based on the ground that a suit under the federal liability law could only be maintained by the personal representative of decedent, was not prejudicial.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4069–4074; Dec. Dig. § 1036.*]

**6. MASTER AND SERVANT (§ 274*)—INJURY TO SERVANT—EVIDENCE—ADMISSIBILITY.**

In an action for the death of a switchman while attempting to adjust a coupler on a car in consequence of the engineer of the switch engine striking another car with such force as to cause it to back against decedent without warning, evidence that, under the rules of the yard, in making up trains, cars would not be moved until signaled by the switchman or foreman, was admissible on the issue of decedent's contributory negligence in attempting to adjust the coupler, since he could anticipate that the cars would not be moved until he gave or received a signal.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 939–949; Dec. Dig. § 274.*]

**7. MASTER AND SERVANT (§ 291*)—INSTRUCTIONS—MISLEADING INSTRUCTIONS.**

Where, in an action for the death of a switchman while attempting to adjust a coupler on a car, assumed risk was not pleaded, a charge, authorizing a verdict for the railroad company if decedent in getting in front of the car was guilty of negligence proximately contributing to his death, and authorizing a finding that decedent was not guilty of contributory negligence if he exercised ordinary care and had no knowledge of the danger or risk in attempting to adjust the coupler, was not objectionable as misleading because blending the law of assumed risk and contributory negligence.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1136–1147; Dec. Dig. § 291.*]

**8. TRIAL (§ 260*)—INSTRUCTIONS—REFUSAL TO GIVE INSTRUCTIONS COVERED BY THE CHARGE GIVEN.**

Where every applicable feature of the evidence on contributory negligence in the action for the death of a servant was affirmatively covered by the court's charge, charges asking for no additional and proper issues were properly refused.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 651–659; Dec. Dig. § 260.*]

**9. MASTER AND SERVANT (§ 291*)—INJURY TO SERVANT—INSTRUCTIONS.**

Where an action for the death of a switchman while attempting to adjust a coupler on a box car was submitted on the issue of common-law negligence applicable to master and servant, the refusal to define an automatic coupler under the federal liability law was not erroneous.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1136–1147; Dec. Dig. § 291.*]

**10. TRIAL (§ 252*)—INJURY TO SERVANT—EVIDENCE—INSTRUCTIONS.**

Where, in an action for the death of a switchman while attempting to adjust a coupler on a car, the undisputed evidence showed that the car was standing when decedent went in front of it to adjust a coupler, and that the engineer of the switch engine struck another car with such force as to cause it to back against decedent without warning, the refusal to charge that, if decedent was killed while between moving cars to couple the same and in violation of his contract of employment, he could not recover, was not erroneous.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 596–612; Dec. Dig. § 252.*]

Appeal from District Court, Lamar County; T. D. Montrose, Judge.

Action by Mrs. Georgia Boston and others against the Paris & Great Northern Railroad Company. From a judgment for plaintiffs, defendant appeals. Affirmed.

Wright & Patrick, Andrews, Ball & Streetman, and W. F. Evans, for appellant. Moore & Park, for appellees.

LEVY, J. P. C. Boston, a switchman in the employ of appellant company in its yards at Paris, Tex., while undertaking to adjust a coupler on a box car standing on the track on the south side of a public street, was struck and killed by another car, which was standing at the time on the north side of the street, which was about 40 or 60 feet wide, being suddenly and negligently bumped against him. The suit is by the widow and two minor children. Only one of the grounds of negligence pleaded was relied on in the case. This ground was the negligence of the engineer in charge of the switch engine in striking the box car north of the crossing with such force and violence as to cause the car to back against Boston without warning and without knowledge to him. Appellant answered by general denial and contributory negligence.

[1, 2] By the sixth, twenty-third, and twenty-fifth assignments it is contended that the evidence conclusively shows no negligence on appellant's part, and negligence on the part of the deceased. These assignments are here first considered. The evidence shows that about 1 o'clock a. m. the switching crew, of which Boston, the deceased, was one, were engaged in making up a train in the yards at Paris. The crew had brought some cars over the Texas & Pacific tracks and were going to track No. 5 to get more cars. When the engine drawing these cars reached Bonham street on the main line, Boston was directed by the foreman to get off and go over to track No. 5, which is the most westerly

track in the yards of appellant, and be there ready to couple the cars standing south of Bonham street. Bonham street is a public street of the city, between 40 and 60 feet wide, running east and west; and the tracks of appellant run across it north and south. At the time there were eight cars standing on track No. 5 south of Bonham street crossing and between that street and Kaufman, the next street south. There stood two cars on track No. 5 just north of Bonham street. After being directed to go to track No. 5 by the foreman, Boston got off the cars and proceeded down Bonham street; and the engine with the cars from the Texas & Pacific track went north on the main line, with the purpose to back onto track No. 5, couple with the cars standing north of Bonham street, and then to couple to the string of cars south of the crossing, where Boston was directed to be and make ready. The foreman then got off the cars going north at the switch to line up the track for the engine and cars to back in onto track No. 5. The engine and cars attached, upon signal of the foreman, backed in on track No. 5 and against the two cars which stood north of the crossing, but no coupling was effected. The engine with cars attached came to a stop, but the two cars which stood north of the crossing rolled rapidly and suddenly across the street and against the cars standing south of the crossing, and Boston was killed. The foreman, Young, who was standing at the head of the two cars north of the crossing to adjust and make ready the coupling there, was the only person who saw the injury. He testified that, when the engine with cars attached backed against the two cars standing north of the crossing, the engine was going at the rate of speed of about six or eight miles per hour. The engineer testified that the engine was traveling about two miles per hour when the cars north of the crossing were struck. The foreman said that, when the engine and cars attached backed against the two cars standing north of the crossing, the engine came to a standstill, but the two cars rolled away at once at the rate of speed of about five or six miles per hour, against the cars where Boston was, and, when they struck the string of cars where Boston was, rebounded about 18 inches. The two cars were prepared for coupling, the foreman said, but did not effect a coupling. He said further, as did other witnesses, that, if the cars being pushed by the engine had coupled with the cars standing north of the crossing, the engine and cars would have remained at a standstill with the engine and would not have moved across the street. He said that, if the two cars had coupled, the engine and cars would not have moved across the street until he gave the engineer a back-up signal. This signal would have been for the benefit of Boston at the head of the other cars, and the engineer. This was the rule in taking up cars, and invariably enforced. Other witnesses testi-

fied to this method of work, which was well known and always observed. The evidence shows that the coupler on the car just south of the crossing, where Boston was, was equipped with an R. E. Jenney coupler designed to be operated by the manipulation of the lever. The evidence of the foreman and Reed is to the effect that this coupler was the proper one for Boston to open in the line of his duty. This coupler was examined early the next morning after the injury, by the foreman and four others of the crew. When these parties went to the car, the coupler was closed. Reed, one of the switchmen, in the presence of the others, attempted to open the knuckle, and he had to pull the lever 13 or 14 times before he finally succeeded in opening the knuckle, and then it only opened partly and not sufficiently to make a coupling. Secondgoss, a member of the crew, testified that he saw Reed attempt to open the knuckle of the car several times, and was asked if the knuckle could have been opened without stepping in between the rails, to which he answered, "No, you could hardly do it on account of it working so hard." Secondgoss examined the coupler on the end of the car north of the crossing, and testified that it was also out of order and hard to operate. He made the coupling to this car soon after Boston was killed, and had to do so, he said, by going between the tracks and holding the pin up while the cars came together. If the coupling had been in good order, he says, it would not have been necessary to go between the tracks and hold the pin with the hand in order to adjust the coupling. It was proved that Boston was a sober, careful, skillful, and competent switchman. As to where Boston was and what he was doing at the very time of his injury lay in the following evidence of Young, the only witness who saw him. "Q. Where was Mr. Boston when the cars rolled over across Bonham street crossing? A. Mr. Boston was standing ahead of those two cars south of the crossing. I could see his lamp south of the crossing, ahead of the two cars, standing south of the Bonham street crossing, when the cars rolled over against the other cars, and the next thing I saw was his lamp roll off and go out, and I heard him holler, 'For God's sake, take me out.' I went running there, and he was then sitting down on the east rail of No. 5 track with his feet right west. I grabbed him under the arm and pulled him backward off the track. He never spoke more. He was mashed in the groin and back between the two drawheads of the cars."

All the mass of evidence is not attempted to be set out—only salient and proven features of it. From this evidence it could reasonably and fairly be said that the car north of the crossing was prepared for coupling with the cars attached to the engine, and that it failed to make the coupling either because it was defective, or because the engine was

backed at too great a rate of speed, causing it to fail to· couple and to roll with force against deceased. There is sufficient evidence to show that the coupler on the car north of the crossing was defective. There is also ample evidence to show that the coupler where deceased was killed was defective at the time if it took 13 or 14 efforts at the lever ·to partly open it, and then not sufficiently until the hand was also used. The engine was running at between six and eight miles per hour. So from these facts affirmatively appearing, and the further evidence that if the couplers are in good order and the engine handled properly it will not fail to couple, the conclusion of negligence could be drawn. The evidence further shows that when in good order couplings sometimes fail to make when struck too hard. And from this the inference could be drawn that the cars were bumped too hard by an engine going at the speed of six or eight miles per hour. That it must have been hit very hard is shown by the fact that in a distance of 60 feet on a slight down grade track it rebounded 18 inches from the contact with the car across the street. As to Boston's conduct it could be said that it clearly appears that he went in his line of duty to the car standing south of the crossing, and which was equipped with an automatic coupler, to prepare it for coupling with the cars to be backed in from the north; that he found the knuckle closed, because it was so found on examination the next morning, and attempted to open it by the use of the lever; that by reason of its inoperative condition, which was affirmatively shown, he, as was his proven duty, attempted to adjust it with his hands so that the coupling could be effected. It was affirmatively proved that the knuckle was hard to open with the hands. Thus the conclusion could be reached that he was working in an attempt to adjust the coupler in his line of duty, and was crushed to death by a box car suddenly and negligently bumped against him. He was not violating any rule of the company in doing this, because the cars before and behind him were standing still and not moving. The rule only forbids coupling cars "while they are in motion." He was not voluntarily placing himself in a place of danger, because the cars were standing, and he knew the general methods and rules followed and enforced in making up trains, and had the right to believe that such rules would be followed on this occasion, that the engine and cars would not be moved across the street until he signaled that all was ready or was signaled of the coming of the other cars across the street. Because of the suddenness and speed with which the car traveled against him, it could be inferred that he had not sufficient time or warning of approach to avoid injury from it. We therefore conclude that the issues of negligence and contributory negligence were properly passed to the jury for decision, as was done, and that their finding against the appellant on these issues is fully supported by the evidence.

[3, 4] The first assignment complains of the refusal of the court to grant a motion for removal of the cause to the Circuit Court of the United States. There is no bill of exceptions in the record from which to review the exception. If the motion, though, should be treated as a petition for removal, it is insufficient because not accompanied by a bond, and besides was not presented in time, for two terms of court had passed before the filing of the motion. Even if the suit should be classed as a suit under the federal liability law, as urged, the motion should have been overruled because the act of Congress effective April 5, 1910 (Act April 5, 1910, c. 143, 36 Stat. 291), conferred concurrent jurisdiction on state and federal courts on cases arising under the act. It was not a suit, though, we think, under the federal liability law.

[5] The second assignment is based on the same contention—that the suit is under the federal liability law, and could only be maintained by the personal representative of the deceased, as required by that act. There were two grounds of negligence pleaded. One was common-law negligence. Assuming that the other ground of negligence should properly be construed as negligence arising from defects in designated instrumentalities in use in interstate commerce, and that because thereof the prescribed federal procedure of the liability act would apply and govern the bringing of the suit on such negligence in state courts, which have concurrent jurisdiction, still the error of the court in not sustaining the exception on the ground of parties mentioned is entirely removed and made harmless when only the common-law negligence was allowed to be recovered on, as here.

[6] The testimony of Reed was admissible, as bearing upon the negligence of deceased, to show the rules of the yard in making up trains that the cars would not be moved until signaled by Boston or the foreman. In going between the standing cars, deceased could have anticipated that they would not be moved until he signaled, or until he was notified by signal. So the fifth assignment is overruled.

The eighth assignment assails the fourth paragraph of the court's charge. This paragraph authorized a recovery for appellees upon the finding that "the defendant failed to exercise ordinary care to maintain the coupling appliances on said cars in a reasonably safe condition, and that such failure was negligence on the part of defendant and was the proximate cause of the injury and death of Boston." This charge is assailed upon the several grounds to the effect that the evidence did not warrant the issue. The evidence, we think, sufficiently presented the issue, as appears under the first assignment.

The other ground of objection is also overruled.

[7] The ninth assignment assails the latter part of the fifth paragraph of the charge, upon the several grounds to the effect that it was calculated to confuse the jury, because it blended the law of assumed risk and contributory negligence, and the blending deprived appellant of the benefit of both defenses. There was no question of assumed risk in the case, neither was it pleaded. The first portion of the paragraph affirmatively authorized a finding for appellant if the deceased in going in front of the car, or in attempting to adjust the coupler in the manner he did, was guilty of negligence proximately causing or contributing to cause his death. Every feature of the evidence in this respect was covered. In fact, it could be said that the negligence of deceased is so slightly presented by the evidence as to barely, if at all, pass the border line of an issue. The second portion of the charge was not a limitation upon the first portion, but authorized a finding that deceased would not be guilty of contributory negligence if (1) he exercised ordinary care in the particulars stated in the first portion, and (2) "had no knowledge of the danger or risk in attempting to adjust the coupler and in going between the tracks, and he would not necessarily know thereof in the ordinary discharge of the duties of his service." There was no error appellant could complain of, we think.

[8] The twelfth, fourteenth, seventeenth, eighteenth, nineteenth, twenty-first, and twenty-second assignments all relate to special charges on contributory negligence asked to be given. Every applicable feature of the evidence on contributory negligence was fully and affirmatively covered by the court's charge and the special charges ask for no additional and proper issues, and the assignments are overruled.

The verdict is not excessive, and the twenty-sixth assignment is overruled.

[9] The twenty-fourth assignment complains of the refusal to give a special charge defining an "automatic coupler" under the federal law. The court did not authorize a recovery for the alleged ground of negligence in failing to equip the car with an automatic coupler, but upon the alleged common-law negligence applicable to master and servant. Hence there was no error in refusing the charge.

[10] The fifteenth assignment complains of the refusal to give a special charge to the effect that, if deceased was killed while between moving cars for the purpose of coupling same, and in violation of his contract of employment, the appellees would be precluded from a recovery in the case. The application for employment made by Boston contains, among other things, the following: "I understand that going or remaining between cars to couple or uncouple them, or for any other purpose, while they are in motion, is dangerous, and is forbidden by the rules of the company, and I agree to refrain from so doing." The violation of a rule under the circumstances in this case was not negligence per se, as the special charge makes it. And the charge was properly refused for the further sufficient reason that it was not applicable to the evidence. The undisputed evidence is that the cars on each side of the crossing were standing and not moving when Boston went in front of the standing car to adjust or prepare the coupling. The rule, forbids coupling cars "while they are in motion." It cannot even be questioned that the evidence conclusively establishes that, because of the failure to effect a coupling with the cars north of the street, they were suddenly and forcibly pushed over the crossing by the force with which they were struck, and caught Boston without any anticipation on his part that it would be so done, while he was attempting to adjust the coupler on the standing car, to his fatal injury.

All assignments not mentioned have been considered, and are overruled.

The judgment is affirmed.