H. C. (Dick) THOMAS, and J. H. (John) Thomas, Individually and as co-partners d/b/a Thomas and Thomas, Appellants,

v.

G. Dale MORRISON, Appellee.

No. 6488.

Court of Civil Appeals of Texas, El Paso.

March 17, 1976.

On Rehearing April 28, 1976.

Rehearing Denied April 28, 1976.

Second Rehearing Denied June 2, 1976.

John L. Shepherd, Seminole, Prappas, Caldwell & Moncure, B. Edward Williamson, Houston, for appellants.

Garner, Vickers, Purdom & Nelson, Robert E. Garner, John E. Vickers, Lubbock, Gibson, Ochsner, Adkins, Harlan & Hankins, Beau Boulter, Amarillo, for appellee.

### OPINION

OSBORN, Justice.

The Appellants complain of a judgment entered against them for damages resulting from a breach of a lease of one section of

land in Gaines County for the purpose of raising alfalfa and grazing cattle. Having concluded that the judgment was not based upon a proper measure of damages, we reverse and remand for a new trial.

In 1972, Appellee acquired a section of land about five miles southwest of Seminole, on which was located two water wells and pumps, and a 26 tower irrigation system. Mr. Morrison bought the land for approximately $150.00 an acre which consisted of payment in cash of $2,200.00, a $1,000.00 note and assumption of a loan to John Hancock Insurance Company for $81,-000.00, plus payment of $15,000.00 to make the loan current. After an unsuccessful attempt to sell the property, he entered into negotiations with John Thomas for a lease for grazing purposes. There was a substantial controversy over what were the terms of the lease as finally agreed upon between the parties. On June 8, 1972, Mr. Thomas sent Mr. Morrison a proposed lease for the period of June 1972 through December 1972 for the sum of $10.00 and other valuable consideration. Under the terms of the lease, Thomas & Thomas (a partnership composed of J. H. Thomas and H. C. Thomas) agreed to "perform whatever tilling operations that are directed" by Morrison for one-half (½) of the prevailing custom rate. On June 14, 1972, Morrison returned the lease unsigned and noted that it did not mention the cotton allotment which they had discussed and raised a question as to whether there was to be a grass or alfalfa crop. On June 17, 1972, Thomas made changes in the lease and sent to Morrison a draft of two leases, one covering a period from June 1972 through December 1972, and providing for a ⅒th acre of permanent cotton allotment to be left on the land after the lease expired and with the same clause on tilling operations. The other lease provided for a term from June 1972 through December 1972, and provided that:

"Lessee agrees to plant the above Section to alfalfa and will provide the necessary pumps, motors, and related irrigation equipment and fences to care for same, and Lessee will provide the necessary cattle to keep the alfalfa in a fully grazing condition. Lessee will provide the overseer and care for its own cattle. Lessor will have no responsibility for cattle count or health. Lessee will pay Lessor 12¢ per pound on gain for all gain."

Morrison approved and returned the proposed leases on June 20, 1972, the leases were executed effective June 22, 1972, after the period of the second agreement was corrected by Thomas to provide for a term from October 1, 1972 through September 30, 1977.

According to Mr. Thomas, he prepared the leases and had his secretary type them. In September, 1972, he discovered what he considered to be an error or mistake in the long-term lease. He said it provided for "lessee" to plant the alfalfa, etc., when in fact it was the original agreement of the parties that "lessor" had such responsibility. Morrison denied that there was any error or mistake in the lease. Being unable to resolve the issue, Mr. Thomas wrote Mr. Morrison on June 8, 1973, stating that if the typographical error could not be corrected, he would be willing to (1) cancel the lease, (2) furnish the capital for irrigating at a reduced grazing fee, or (3) negotiate some other type arrangement. He concluded his letter by stating: "Without definitive action on your part, we shall take the position that the lease be cancelled in its entirety upon removal of the cattle that are presently there." Mr. Morrison's lawyer promptly replied that his client was unwilling to renegotiate for a new lease. Demand was made for payment due under the contract for gain on cattle already grazed, plus damages for failure to plant alfalfa. The matter being unresolved, this suit was filed the following month.

The section of land involved in this suit was foreclosed under the John Hancock Deed of Trust on April 2, 1974, and this case was tried in March, 1975.

The jury failed to find that the long-term lease contained a mutual mistake. They also failed to find that "Morrison expressly directed Thomas & Thomas to have the tilling and planting operations performed."

The last Special Issue, No. 3, and its answer was as follows:

"What sum of money do you find from the preponderance of the evidence Morrison would have received as rent from Thomas and Thomas during the term of the lease in question had the section been planted to alfalfa and fully grazed?

Answer in dollars and cents, if any, as you may find.

Answer: $162,750.00"

Judgment was entered for that amount, plus the amount Thomas acknowledged as due for grazing, plus the amount stipulated as to the increase in the value of land had it been planted in alfalfa.

The Appellants present seven Points of Error, most of which are related to Special Issue No. 3 and the judgment based upon the answer to that Issue. At the trial, Appellants objected to Special Issue No. 3 "for the reason that this issue does not properly outline the damages under the lease in question", and "for the further reason that said issue and the wording contained therein is not the proper measure of damages in this cause." The first Point of Error complains of the error in overruling those objections.

■ While the Point of Error probably presents error, the objection upon which it is based is not sufficient to have preserved the error. Rule 274, Tex.R.Civ.P., requires that a party point out distinctively the matter to which he objects and the grounds of his objection. In *Whitson Company v. Bluff Creek Oil Company,* 156 Tex. 139, 293 S.W.2d 488 (1956), the Court considered a similar objection and concluded that the objection was not adequate. The Court said:

" * * * The only objection made by it to the special issue submitting market value other than that Rucker had parted with his interest, which objection is not briefed, was this: 'Because said issue does not inquire as to the proper measure of damages.' The general objection cannot be considered. If the market value as submitted was not the correct measure of damages, objection should have been

made to the issue by Whitson Company pointing out distinctively the grounds of its objections. Rule 274, Texas Rules of Civil Procedure. Having failed to do so, it cannot thereafter be heard to say that the measure of damages as submitted was improper. * * * "

That conclusion was followed and the same results reached in *Cantile v. Vanity Fair Properties,* 505 S.W.2d 654 (Tex.Civ.App.— San Antonio 1973, writ ref'd n. r. e.). The first Point of Error is overruled.

■ The second Point of Error also complains of overruling an objection to Special Issue No. 3 because it inquired as to rent to be received during the entire term of the lease even though the parties had stipulated as to the amount due for a part of the lease. The evidence established that alfalfa would normally be planted in August or September and that it should not be grazed until it had a year's growth. Mr. Thomas contended that since the long-term lease did not commence until October, 1972, alfalfa could not be planted until August or September 1973, but that in order to get some income prior to grazing in 1974, it was decided to plant and graze wheat in 1972–73. The evidence established without dispute that during the first year Thomas & Thomas did plant a wheat crop, and did graze cattle on the wheat, and it was stipulated that this resulted in an indebtedness to Morrison of $5,804.40 as rent during that period of time, although there was a dispute as to whether Morrison authorized or directed that wheat be planted the first year.

Since Special Issue No. 3 inquired as to the rent Morrison would have received for the full term of the lease, and since the parties stipulated as to recovery of $5,804.40 from grazing on the wheat during the first part of the lease, Appellants suggest that Appellee recovered double damages. They urge that their objection to the special issue should have been sustained. *International-Great Northern R. Co. v. King,* 41 S.W.2d 234 (Tex.Comm'n App. 1931, holding approved). Mr. Morrison testified that it was his understanding that the land was to be planted in alfalfa in 1972,

and that the two leases were tied to each other so as to provide grazing income at the earliest possible time, probably in 1973. Under that construction of the two leases, the Appellant could have received double damages had the jury believed that alfalfa should have been planted in 1972 and grazed in 1973, the same year in which the wheat was grazed and for which Appellants admitted a liability of $5,804.40. We sustain the second Point of Error. Were this the only point to be sustained we would order a remittitur, but the next Point presents error which cannot be cured by a remittitur.

By the third Point of Error, Appellants contend that the answer to Special Issue No. 3 could not form the basis upon which the trial Court could render judgment against them. We agree. In *White v. Watkins,* 385 S.W.2d 267 (Tex.Civ.App.—Waco 1964, no writ) the Court stated the rule for determining damages where a tenant breaches his lease and abandons the premises. The Court said:

"Where the tenant abandons the premises, the lessor, as one remedy, may accept the breach by the tenant, retake possession and sue for his damages. *Marathon Oil Co. v. Rone* (Tex.Civ.App.1935), 83 S.W.2d 1028, 1031, writ ref. If he elects this remedy and has relet the premises for the entire unexpired term, the measure of lessor's damage is generally the difference between the rental originally contracted for and that realized from the reletting.

\*　　\*　　\*　　\*　　\*　　\*

" \* \* \* But he may elect, instead, to sue for damages for the anticipatory breach without reletting, and without exercising any diligence to do so. In the latter case the measure of damages is the difference between the present value of the rentals contracted for in the lease and the reasonable cash market value of the lease for its unexpired term. *John Church Co. v. Martinez* (Tex.Civ.App. 1918), 204 S.W. 486, 489, writ ref.; *San Antonio Brewing Ass'n v. Brents* (1905), 39 Tex.Civ.App. 443, 88 S.W. 368, 370,

writ ref.; *Massie v. State Nat. Bank* (1895), 11 Tex.Civ.App. 280, 32 S.W. 797, 798; 32 Am.Jur., Landlord & Tenant, Sec. 161, p. 157; 137 A.L.R. 439; Annotation, 85 L.Ed. 352. See *Employment Advisors, Inc. v. Sparks,* Tex., 368 S.W.2d 199; *Robinson Seed & Plant Co. v. Hexter & Kramer* (Tex.Civ.App.1914), 167 S.W. 749, 751."

The same rule is applied in *Evons v. Winkler,* 388 S.W.2d 265 (Tex.Civ.App.—Corpus Christi 1965, writ ref'd n. r. e.) where the Court said:

"Although the testimony, as summarized above, is incomplete as to whether or not Lawless and Kirk had abandoned the premises by June, 1959, we feel that it is sufficient to sustain an implied finding by the trial court that such was the case. In such event, \* \* \* the landlord would have had the right to relet the property and, not having agreed to surrender his rights under the lease contract, recover from the former lessee or assignee the amount of the agreed rent for the entire contractual period of the lease less the sum that he may realize from the re-letting, after the use of reasonable diligence to obtain a tenant. \* \* \* "

Where a party fails to establish an essential element of the proper measure of damages, the case must be reversed and remanded for a new trial. *Cantile v. Vanity Fair Properties,* supra. In our case there is no finding of the "present cash value" of the rent contracted for in the lease, but only the amount of rents to be received. There was no finding at all as to the reasonable cash market value of the lease for its unexpired term. Both findings were essential elements of the Appellee's damages in this case. We sustain the Appellants' third Point of Error.

In connection with the measure of damages, we note the rule of law which provides: "A tenancy may also terminate by the ending of the reversionary interest as where a mortgage executed prior to the lease is foreclosed on the property." Thompson on Real Property, Vol. 3A § 1318 p. 538. As noted above, the property under

lease was foreclosed on April, 1974. This could have terminated any lease made after the Deed of Trust and which would as a matter of law be subject to the rights of the mortgagor. 36 Tex.Jur.2d, Landlord and Tenant, § 262. Certainly, it would have terminated the lessor's rights under the lease. Thus, on retrial it would appear that lessor's damages would be limited to a period of time up to the foreclosure if proper pleadings and proof are made as to the foreclosure and the lessor's rights being subject to the rights of the mortgagor.

The other Points have been considered, but need not be passed on since any error involved will not likely reoccur upon another trial. The judgment of the trial Court is reversed and the cause is remanded for a new trial.

### ON MOTION FOR REHEARING

Appellee's Motion for Rehearing raises for the first time the question of failure to properly assign error in the trial Court as to a point of error which has been sustained on appeal. Some discussion is essential because the answer to the issue is neither simple nor easy.

First, Appellants' brief presents as the third point of error the following:

> "The Trial Court erred in entering judgment for Appellee based upon the jury verdict for the reason that, as a matter of law, the response of the jury to Special Issue No. 3 could not form the basis upon which the Court could render a proper judgment."

That point and the following point, which raised a question as to the sufficiency of the evidence to support the answer to Special Issue No. 3, were argued together. None of Appellants' points of error were shown to be germane to assignments of error in the trial Court as required by Rule 418(b), Tex. R.Civ.P.

Appellee, by its first reply point, urged that "Appellants' objections to the damage issue, Special Issue No. 3, are too general to comply with Rule 274, and cannot be considered on appeal." While the reply point was stated to be in reply to Appellants' points of error one and three, it did not actually reply to point three which was related to the jury verdict as a basis for judgment, rather than objections to the charge, as was raised by point of error number one. We did sustain the first reply point insofar as it related to point of error number one because the objections to the Court's charge were too general to be considered.

Appellee's reply points two and three were also in reply to Appellants' point of error number three. Those reply points were on the merits of the issue raised by the third point of error.

■ Having lost on each of the propositions set forth in reply to Appellants' third point of error, Appellee now seeks a second bite at the apple and for the first time, on motion for rehearing, urges that there is no assignment of error in the trial Court to raise the third point of error. He relies primarily on *Wagner v. Foster*, 161 Tex. 333, 341 S.W.2d 887 (1960). The Appellant has filed no reply to the motion for rehearing. We are well aware of the need for proper assignment in order to preserve error for appeal. See *W. T. Grant Company v. Key*, 433 S.W.2d 163 (Tex.1968).

The final question is when must the issue be raised. In the Wagner case, the points sustained by the Court of Civil Appeals were alleged to present fundamental error and thus there was no need for a proper assignment in the trial Court. The Supreme Court concluded that the error was not fundamental and, not having been properly assigned, the points could not be considered. In the W. T. Grant Company case, Appellee's counterpoint one in the Court of Civil Appeals was that there was no proper assignment of error in the trial Court as to the issues raised by Appellant's points of error one and two. The argument in that counterpoint placed reliance upon *Wagner v. Foster*, supra; *Oilfield Haulers Ass'n. v. Railroad Commission*, 381 S.W.2d 183 (Tex. 1964); and *Garza v. Alviar*, 395 S.W.2d 821 (Tex.1965). Thus, the issue of lack of as-

signment of error in the trial Court was before the Court of Civil Appeals and was properly preserved for determination in the application for writ of error.

In the present case, Appellee chose to do battle on the merits of the issue presented in the third point of error and lost. Now he claims for the first time that there should have been no battle because the issue was not properly raised in the trial Court. May one wait until after an issue has been decided adversely on the merits and then complain for the first time on motion for rehearing about a failure to properly assign the error? There are many cases holding that a new issue may not be raised for the first time on appeal. 4 Tex.Dig., Appeal and Error, Key No. 835(2).

In *Southern Gas & Gasoline Engine Co. v. Adams & Peters*, 169 S.W. 1143 (Tex.Civ. App.—San Antonio 1914, writ ref'd), the Court, on motion for rehearing, said:

"Appellees urge, in their motion for a rehearing, that this court erred in sustaining appellant's assignments of error numbered 6, 7, 8, 10, and 11 for the reason that said assignments complained of the errors of the trial court in either giving charges or refusing charges to the jury, and that there are no bills of exception in the record to the action of the court complained of in the assignments, and therefore this court had no power to consider and determine such assignments.

"Both parties to this appeal filed lengthy and able briefs, but appellees nowhere in their brief made any objection to the consideration of these assignments. Nor was our attention ever called to the fact that no bills of exception were reserved to the action of the court in such matter until the motion for a rehearing was filed. Under rule 40 this court is authorized to rely upon the briefs for a proper presentation of the case on appeal, without an examination of the record; and to assume that if there were any objections to the assignments or to the matters upon which the same were predicated, the other party would call our at-

tention to it. Rule 41 (142 S.W. xiv), expressly provides that:

'Whatever of the statements of appellant or plaintiff in error in his brief is not contested will be considered as acquiesced in.'

"We did not go into the lengthy transcript to see if there were preserved bills of exception, but assumed that, if counsel for appellees had any objection to the consideration of said assignments, the same would have been made known to us. Appellant insists that objections or exceptions were preserved and are shown in the record; but that is aside from the question. To tolerate a practice of this kind would virtually require a resubmission of the case. Certainly another consideration along a line not heretofore presented to us. It would be equivalent to giving a party two opportunities to brief the case. No matter what disposition this court would have made of these assignments, had timely objection been made, when able counsel present to us a brief upon all of them, in which they are presumed to urge every point favorable to them and do not raise the question, now for the first time urged, until a motion for rehearing, this court will consider that any other objection not contained in the brief was waived, unless it be some matter of fundamental law. And this is not a question of fundamental law, being purely one of procedure."

The following year, the court in *Taylor v. First State Bank of Hawley*, 178 S.W. 35 (Tex.Civ.App.—Fort Worth 1915, no writ), overruling a motion for rehearing wrote:

"Appellee also insists that we erred in the conclusion that there was no evidence of fraud, and in here rendering the judgment, for the reason that appellant on the trial below made no objection to the court's charge submitting the issue of fraud, and, on the contrary, requested a special charge on the subject, thus, as is contended, waiving any right on appeal to question the sufficiency of the evidence to sustain the verdict of the jury in

appellee's favor on that issue. On original hearing appellee made no such objection to a consideration of the assignments of error in this case, at least one of which directly attacked the judgment for want of sufficient evidence to sustain it on the issue of fraud, and it is now too late to do so. See opinion on rehearing in *Southern Gas & Gasoline Engine Co. v. Adams & Peters*, 169 S.W. 1149."

The above two cases served as a basis for the conclusion reached on motion for rehearing in *Texas Employers' Ins. Ass'n v. Downing*, 218 S.W. 112 (Tex.Civ.App.— Amarillo 1919, writ ref'd), where the court said:

"Appellee, in his motion for rehearing, calls our attention to the fact that the proceedings of the trial court, in respect to the motion to require a physical examination of the plaintiff, are not embodied in a formal bill of exceptions, but are preserved in the record only by the motion itself and order overruling it, which recites therein an exception on the part of the defendant, copied separately in the transcript, the statement of the evidence heard on the motion appearing in the statement of facts. Appellee now asserts that we were without authority to consider the assignment because of the absence of a bill of exceptions, as required by the rules. If this objection to the consideration of the assignment had been presented at the proper time, we would have felt bound to have sustained it. Rules 53, 54, and 55 (142 S.W. xxi) for the District and County Courts; *Weatherford M. W., etc., Ry. Co. v. Smith*, 170 S.W. 133; *Panhandle, etc., Ry. Co. v. Kirby*, 108 S.W. 498; *Dixon v. Cooper*, 178 S.W. 695; *Paris, etc., Ry. Co. v. Boston*, 142 S.W. 944.

"The case was fully briefed by both parties, and was orally argued on original submission, and no such objection to the consideration of the assignment was then urged by appellee. The appellant, in the statement under the assignment, copied the motion in full, referred to the evidence introduced on its hearing, and stated that the court overruled the motion, and that appellant duly excepted to such action. The statement also referred to other proceedings had which were thought to have a bearing on the propriety of the action of the court on the motion. We think we were justified in considering the assignment on the uncontested statement made by appellant, and that it is now too late for appellee to urge this objection. Rules 40 and 41 (142 S.W. xiv) for the Courts of Civil Appeals; *Southern Gas & Gasoline Engine Co. v. Adams & Peters*, 169 S.W. 1149, opinion on motion for rehearing (writ of error was refused in this case); *Taylor v. First State Bank*, 178 S.W. 38, opinion on motion for rehearing."

Part of the problem arises from this Court's failure to require strict compliance by the Appellants with Rule 418. Unfortunately, this is a defect which appears in many appellants' briefs filed in this Court. But, Appellee having filed his reply brief and having raised no question about the assignment of error to support point of error number three, we believe the Court properly considered the issue raised by the point of error and the objection concerning a proper assignment in the trial Court comes too late and is waived for failure to timely raise the issue.

We have also considered the other points of error in the Appellee's Motion for Rehearing and all of the points are overruled and the Motion for Rehearing is denied.