570 S.W.2d 398 (1978)
TEXAS EMPLOYERS' INSURANCE ASSOCIATION, Appellant,
v.
Mary E. STODGHILL, a widow, Individually and as next friend for minor children, Daniel T. Stodghill, et al., Appellee.
No. 6670.
Court of Civil Appeals of Texas, El Paso.
June 7, 1978.
Rehearing Denied August 2, 1978.
Shafer, Gilliland, Davis, Bunton & McCollum, Inc., Connell Ashley, Tryon D. Lewis, Odessa, for appellant.
Warren Burnett, Associated, Warren Burnett, Richard J. Clarkson, Odessa, for appellee.
Strasburger & Price, Royal H. Brin, Jr., Dallas, for amicus curiae Alliance of American Insurers.

OPINION
PRESLAR, Chief Justice.
This is a worker's compensation case involving a question of whether an injury suffered in the course of employment was a *399 producing cause of death. Based on a jury verdict, judgment was entered for the Plaintiff. We reverse and render.
The deceased, Thomas Stodghill, suffered an injury while working on a drilling rig when he fell some fifteen feet off the rig floor. This injury occurred on April 26, 1974, and his injuries consisted of a fracture of the right wrist, acute lumbosacral strain, bruise and contusion of the right hip and right elbow, and possible cerebral concession. He was hospitalized by Dr. Edwin E. Franks for four days and returned for treatment on three occasions on May 7, 20, and 28. During that period of time, he showed general improvement with treatment continuing for pain and discomfort in his back, right arm and wrist, and blood pressure. On June 12th at home, his wife found him slumped over in his chair; he was rushed to the hospital emergency room where he was pronounced dead with the cause of death being listed as myocardial infarction.
Appellee sought death benefits under the Worker's Compensation Act on the basis that the injuries suffered in the fall at the rig caused or aggravated a hypertension condition which caused a heart attack and death. In response to special issues, the jury found: (1) that he suffered a heart attack, and (2) that the accidental injury was a producing cause of his death.
Appellant has points of error challenging the legal sufficiency and factual sufficiency of the evidence to support the jury finding that the accidental injury was a producing cause of death. The proof of the cause of death rests on the testimony of two medical doctors: Dr. Franks, who treated the deceased, as noted above, and Dr. Pazos, who had never seen nor treated the deceased, but who testified after a review of the medical records of Dr. Franks and the hospital. For the test on reviewing the evidence as to causation, we quote from Parker v. Employers Mutual Liability Insurance Company of Wisconsin, 440 S.W.2d 43, 46 (Tex.1969):
"In Texas, expert medical testimony can enable a plaintiff's action to go to the jury if the testimony is that there is a `reasonable probability' of a causal connection between an act and a present injury. Galveston H. & S. A. Ry. Co. v. Powers, 101 Tex. 161, 105 S.W. 491, 493 (1907).
"In Insurance Co. of North America v. Myers, 411 S.W.2d 710 (Tex.Sup.1967) the substance of the doctor's testimony was that it was only a possibility that the injury caused the death, not that it was or was not a reasonable medical probability. In denying recovery in that case we held: `Causal connection * * * must rest in reasonable probabilities; otherwise, the inference that such actually did occur can be no more than speculation or conjecture.' 411 S.W.2d 710, 713."
Dr. Pazos testified that, from the fact that the record showed that the man had been suffering from essential hypertension, the injuries which he received on the job "could aggravate the progress, and trigger final complication to the hypertension." He was then asked:
"Q. Now, I want to talk to you about that. I am going to ask you to assume with me, doctor, certain things to be true. Assume that after the period in the hospital that you have read about, as shown in Plaintiff's Exhibit 2; assumed [sic] that he was at home, and that from time to time he would complain of indigestion, that he would, from time to time, swell or get puffed or bloated as his family had not seen him do before; that he was worried about going back to work, being able to go back to work, and finally on the 12th of June, he complained of indigestion and shortly thereafter had to be taken to the hospital where he was pronounced dead, and then assume that Plaintiff's Exhibit No. 1, [death certificate] shows what happened at the hospital
* * * * * *
"Q. Now assume all of those things to be true. Assume that is what happened to him. Now, if that was the course of his treatment, and if he had the hypertension and had the kind of injury that he *400 received on April 26, is there any question in your mind but what the injury triggered or aggravated the hypertension?"
Following an objection which was overruled, he was then asked:
"Q. Do you have any doubt but what the injury triggered or aggravated the hypertension?
"A. Yes, it did."
He then testified that medical books and authorities taught that the stress of bodily injury aggravates arterial hypertension, and that the type of injury this man had received would probably create physical and mental stress. He was then asked:
"Q. If you assume the things that show in the record, and that I have asked you to assume about his history, is there any question in your mind but what the injury that he got in April hastened his death?
* * * * * *
"THE WITNESS: I have a strong belief that a man that has been injured, a man of this age, 49 years old with a previous history of arterial hypertension, and had been involved in an accident, any kind of accident which produced a bodily injury, will trigger any complication in hypertension, and basisand the cause of death or death. The same thing that could be if a heart failure, could be renal failure, a blood clot, miocardial [sic] infarction; anything could be the fault, of it, but the main thing here, the man was injured, and that injury could produce probably some kind of shortening of the life span."
Dr. Franks testified that Mr. Stodghill had a previous history of signs and symptoms of hypertension but had never been diagnosed or treated for such, and that the hypertension which he found was of unknown cause or origin. He was asked, "if a person has hypertension, stress can kill a person, can't it?" And he answered, "It can." He testified that the accident itself caused an initial elevation of blood pressure but that it subsided to normal with treatment; that a later elevation of blood pressure was due to the hypertension which he had previously suffered; that he did not think that the hypertension was related to the injury in question; and that on the patient's last visit, he increased his medication for hypertension. On the direct point of heart attack causation, Dr. Franks was strongly of the opinion that the injury did not cause the heart attack. He was asked:
"Q. Doctor, do you feel, or from your hospital records; from you having seen the patient, or your patient, Mr. Stodghill, I will assume three times after the time he was discharged from the hospital, do you think, assuming that he did have a heart attack on June 12th, of 1974, do you think that heart attack could have been produced in any way, or was produced in any way by any matter related to hypertension from the accident?
"A. It could not.
"Q. From the accident?
"A. Not from the accident.
"Q. Do you think it could have had any relation to the accident of April 26th of '74?
"A. Who knows? I don't. I can'tI have my own opinion, but then I can't back that. I don't know.
"Q. What is you medical opinion?
"A. My medical opinion is that the heart attack had nothing to do with his accident that he had. That is my medical opinion."
At another point he was asked:
"Q. Do you thinkit is in evidence that on the 12th day of June, of '74, Mr. Stodghill died. Do you think that his death, the fact that he did in fact die of a heart attack, if in fact he did die of a heart attack, have anything to do relating to the accident of April 26?
"A. No."
And, again, in response to another question as to whether the heart attack had anything to do with the accident of April 26th, he responded:
"A. I don't think that the accident on April 26, caused this man to have a miocardial [sic] infarction. Does that answer it another way?"
*401 We are of the opinion that Appellant's Point of Error No. 4, that there is no evidence to support the jury's finding that the accidental injury suffered by Thomas J. Stodghill on April 26, 1974, was a producing cause of his death, must be sustained. The cause of Mr. Stodghill's heart attack is a question of science determinable only from the testimony of medical experts and must be founded on reasonable probability. Insurance Company of North America v. Myers, 411 S.W.2d 710 (Tex.1966); Bowles v. Bourdon, 148 Tex. 1, 219 S.W.2d 779 (1949). To meet her burden that Mr. Stodghill's death arose out of his employment, Appellee seeks to prove that the fall which her husband suffered on the job caused the heart attack which occurred some 47 days later. The two medical experts did not state as their medical opinion that the heart attack was, in fact or in reasonable medical probability, caused by the prior on-the-job injury. Under such circumstances, we must reverse the judgment of the trial Court and render judgment that Appellee take nothing.
OSBORN, Justice, concurring.
I concur in the reversal, but rather reluctantly in the rendition. The Appellant's brief presents nine points of error. Every point begins "The Trial Court erred in Overruling the Appellant's Motion for New Trial on the ground that * * *," and then specifies the asserted error. A motion for new trial seeks just that, a new trial; but in this case, sustaining a point of error complaining about overruling a motion for new trial results in a rendition! This bothers me and undoubtedly will shock counsel for the Appellee.
It should be noted that the Appellant did file a motion for judgment n.o.v. and there asserted that there is no evidence to justify a finding of the causal connection between the injury and the death of the deceased. The argument in support of the point sustained may be a "no evidence" contention. It states in part:
"* * * The cause of death was myocardial infarction. The only testimony was that myocardial infarction is related to arteriosclerosis. There is no evidence that this disease resulted from hypertension.
"Thus the Appellee's testimony, considered alone, was insufficient to support any jury verdict. Taken in connection with testimony of Dr. Franks, the Appellee's contentions were totally disproved."
At least, the only case cited, Webb v. Western Casualty and Surety Company, 517 S.W.2d 529 (Tex.1974), is a "no evidence" case. The Prayer at the end of the brief did ask that the judgment be reversed and rendered, and, alternatively, a remand for a new trial.
This Court has followed the dictates of the Supreme Court and looked beyond the point of error to the argument to determine the issue presented.[1] We have followed the language in Airway Insurance Company v. Hank's Flite Center, Inc., 534 S.W.2d 878 (Tex.1976), that a prayer for rendition, with a proper procedural basis therefor, usually indicates that the complaint relates to a "no evidence" point.
But in doing all of this, we have rendered the point of error which we sustained meaningless. We have also placed ourselves in direct conflict with the statement in French v. Brodsky, 521 S.W.2d 670 (Tex. Civ.App.Houston [1st Dist.] 1975, writ ref'd n.r.e.), that "if the point of error in the brief is directed only to the asserted error of court in overruling motion for new trial, the appellate court can only remand and cannot render the case if the point is sustained."
Part of the problem results from Appellant's counsel's failure to comply with Rule 418(b), Tex.R.Civ.P., which, at the time these briefs were filed in 1977, required a showing that the point was germane to an assignment of error. This is a recurring problem in many cases. See Thomas v. *402 Morrison, 537 S.W.2d 274 at 281 (Tex.Civ. App.El Paso 1976, writ ref'd n.r.e.). Had the point shown to have been germane to a motion for judgment n.o.v., then the Appellee and this Court would have been alerted to a "no evidence-rendition" point. Had it been shown to be germane to an assignment in the amended motion for new trial, everyone would have known it was a "remand" point. J. Weingarten, Inc. v. Razey, 426 S.W.2d 538 (Tex.1968).
Realizing the requirements of Rule 1 for a liberal construction of all rules and the reasoning behind the results in Fambrough and O'Neil, it must be noted that every "liberal construction" which aids an appellant in obtaining a reversal necessarily makes it more difficult for the appellee to obtain an affirmance. In this case, where every single complaint in the points of error was with regard to overruling a motion for new trial, was Appellee alerted to a possible rendition? Obviously so under the cases noted in the footnote, but not from the points of error.
If points of error are to be meaningless, then perhaps we should do as we have done with motions for new trial, and no longer require them as a part of the appellate process. Another alternative is to consider only the points presented on appeal, and only consider those points which are now properly referenced to the record under Rule 418(d). Let us enforce the rules as written or not have the rules!
It is submitted that Courts reviewing cases on appeal should be able to expect that attorneys will properly assign errors for appeal in a motion for new trial and write artfully drawn points of error asserting the complaint they expect the appellate Court to review. But, obviously, the trend is in the other direction, i. e., abolishing the notice of appeal, doing away with motions for new trial, eliminating the need to designate the instruments in the transcript, and making points of error meaningless. It would seem that every effort is made to provide for appeals by laymen, and not those in a profession.[2]

ON MOTION FOR REHEARING
PRESLAR, Chief Justice.
Appellee, in her motion for rehearing, contends that this Court has no jurisdiction to render upon a point of error germane to the overruling of a motion for new trial. Under Rule 434, Tex.R.Civ.P., we are to render the judgment that the trial Court should have rendered, and that includes rendition, unless there is something further to be determined in the trial Court which requires a remand. All procedural steps have been taken which make rendition of this case in order in this Court.
The points of error in this Court are specific and in proper form. Point of Error No. 1 is that there is "no evidence to support the jury answer to Special Issue No. 1, which Issue inquired as to whether or not the deceased had a heart attack on June 12, 1974." That is followed by Point of Error No. 2 that, as to the same issue, the finding is contrary to the great weight and preponderance of the evidence. Point of Error No. 3 is that the evidence is factually insufficient to support the jury finding as to Special Issue No. 1. Point of Error No. 4, on which this Court based its decision, is:
"The Trial Court erred in Overruling the Appellant's Motion for New Trial on the ground that there is no evidence to support the jury's finding that the accidental injury suffered by Thomas J. *403 Stodghill on April 26, 1974 was a producing cause of his death."
The prayer for relief is first that we render, or, in the alternative, that we remand.
Each point of error starts with "The Trial Court erred in Overruling the Appellant's Motion for New Trial * * *." We see nothing wrong with this since at the time this case was tried the rules required that, in a case tried to a jury, there must be a motion for new trial and the appeal is taken from the order overruling that motion. We see nothing misleading about that recitation when the substance of the point of error is then set out to be very clearly that there is no evidence to support the jury finding. Appellee was not misled by it; in fact, Appellee responded to it, and the case was tried on that basis by the parties and decided on that basis by this Court.
In its motion for new trial, Appellant had an assignment of error "That the trial court erred in failing to grant the Defendant's motion for Judgment notwithstanding the answers of the jury to the charge of the Court for the reasons therein stated." Appellee says this is too broad a point to be considered by the Court and cites this Court's opinion in Guernsey Community Federal Credit Union v. Gonzalez, 539 S.W.2d 896 (1976, writ ref'd n.r.e.). In that case, we refused to consider a point of error which simply said that the trial Court erred in failing to grant the defendant's motion for an instructed verdict. That was a point of error on appeal before this Court. Appellant is here attempting to complain of an assignment in the motion for new trial before the trial Court. Whether the assignment was too broad or not was a matter for the trial Court's consideration, and it overruled the motion for new trial. As noted, the points of error before this Court are clear and proper in their form.
Additionally, Appellant preserved the right to rendition by a Motion for Directed Verdict, as well as its Motion for Judgment Notwithstanding the Verdict. It followed up in its Amended Motion for New Trial with specific separate paragraphs complaining of no evidence to support certain jury findings, including one that "* * * there is no evidence to support the jurys [sic] finding that the accidental injury suffered by Thomas J. Stodghill on April 26, 1974 was a producing cause of his death."
The motion for rehearing is overruled.
OSBORN, Justice, Concurring on Motion for Rehearing.
I concur in the overruling of the motion for rehearing, but for different reasons. I agree with the Appellee that the point of error which has been sustained has not been properly assigned in the motion for new trial as an assignment which can form the basis for a rendition. Assignment of Error No. 10 asserts: "That the trial court erred in failing to grant the Defendant's motion for Judgment notwithstanding the answers of the jury to the charge of the Court for the reasons therein stated." This assignment, which purports to refer to the motion for judgment n.o.v., is not sufficient. Wagner v. Foster, 161 Tex. 333, 341 S.W.2d 887 (1960); W. T. Grant Company v. Key, 433 S.W.2d 163 (Tex.1968). No other complaint is made in the amended motion for new trial with regard to the overruling of the motion for judgment n.o.v., and no complaint is made with regard to the overruling of the motion for instructed verdict.
Assignment of Error No. 5 does complain that there is no evidence to support the jury's finding that the accidental injury was a producing cause of Mr. Stodghill's death. That assignment could only serve as a basis for a remand of the case and not a rendition. J. Weingarten, Inc. v. Razey, 426 S.W.2d 538 (Tex.1968). Certainly, a "no evidence" point may be raised for the first time in a motion for new trial, but such an assignment may only serve as a basis for a remand and not a rendition. Rosas v. Shafer, 415 S.W.2d 889 (Tex.1967); Jeter v. Montfort, 561 S.W.2d 622 (Tex.Civ.App. Beaumont), rev'd on other grounds, 567 S.W.2d 498 (Tex.1978); Gillespey v. Sylvia, 496 S.W.2d 234 (Tex.Civ.App.El Paso 1973, no writ); State v. Wilson, 439 S.W.2d 134 (Tex.Civ.App.Tyler 1969, no writ).
*404 But the Appellee has raised this challenge to the point of error which the Court sustained for the first time on motion for rehearing. We considered a similar complaint in Thomas v. Morrison, 537 S.W.2d 274 (Tex.Civ.App.El Paso 1976, writ ref'd n.r.e.), and concluded that where the complaint was raised for the first time on motion for new trial, it comes too late and is waived for failure to timely raise the issue. For that same reason, I concur in the overruling of the motion for rehearing in this case.
NOTES
[1] See Fambrough v. Wagley, 140 Tex. 577, 169 S.W.2d 478 (1943); Brazos River Authority v. City of Graham, 163 Tex. 167, 354 S.W.2d 99 (1961); O'Neil v. Mack Trucks, Inc., 542 S.W.2d 112 (Tex.1976).
[2] I recognize that I may not be totally objective about this matter, because I have never understood how a point of error complaining that "The Trial Court erred in granting the Motion for Summary Judgment" directs the attention of the Court to the error relied upon. See Malooly Brothers, Inc. v. Napier, 461 S.W.2d 119 (Tex.1970); Guerrero v. American Employers Insurance Company, 520 S.W.2d 560 (Tex. Civ.App.El Paso 1975, no writ). In McWilliams v. Muse, 157 Tex. 109, 300 S.W.2d 643 (1957), the Court noted that a point so general as to encompass any and every error committed by the trial Court means nothing. In Missouri-Kansas-Texas Railroad Company v. McFerrin, 156 Tex. 69, 291 S.W.2d 931 (1956), the Court noted that Rule 418 requires that the point of error refer to the particular error relied upon.