Belcher, the plaintiff below, appeals from a judgment in favor of the defendants, Versatile Farm Equipment Company (Versatile), Clanton Tractor Company (Clanton), and International Harvester Credit Corporation (IHCC). We affirm.
Belcher filed a complaint for declaratory judgment and rescission of a contract for the sale of a tractor against the above-named defendants and Diel Thompson, Inc., a dealer in Versatile equipment. Diel Thompson was dismissed for lack of *Page 914 
jurisdiction.[1] IHCC appeals from the order dismissing Diel 
Thompson. The appeals by Belcher and IHCC were consolidated. Following a judgment for defendants,[2] Belcher filed a motion for new trial and/or motion for judgment notwithstanding the verdict and a motion for clarification. The trial court denied both motions. A motion to enter a judgment in a sum certain or, in the alternative, motion to amend judgment was filed by IHCC. This motion was granted, and a money judgment in the amount of $30,559.98 was rendered against Belcher.
In 1980, Belcher purchased a Versatile 150 tractor from Clanton Tractor Company. Clanton procured this tractor for Belcher from Diel Thompson, Inc., of Toledo, Illinois, the nearest Versatile dealer with a 150 model. IHCC financed the sale from Clanton to Belcher, and Belcher assigned a security interets to IHCC. Clanton assigned and transferred to IHCC the contract with Belcher. Belcher has made no payments toward this debt.
Soon after delivery of the Versatile 150, according to Belcher, problems with the machine began. These included the breaking of the spindles, a loud noise in the power take-off, a leak in the hydraulic system, damaged O-rings in the hydrostatic system, several solenoid burn-outs, and various problems with the battery.
The tractor was accompanied by Versatile's limited warranty included in the owner's manual. The exclusive remedy for breach of the Versatile warranty was the repair and replacement of defective parts. The warranty also contained a caveat that the alteration or addition of equipment not approved by Versatile for installation on Versatile equipment would avoid the warranty. Clanton was authorized by Diel Thompson to perform warranty repair work on the tractor.
The tractor was taken to Clanton four times for warranty-covered repair work. Each time, a spindle was repaired and, in addition, on one occasion, the hydraulic system was repaired and, on another, the faulty solenoid was repaired. Each time, Clanton performed the necessary repair work and submitted repair reports/claims to Diel Thompson. Diel Thompson, in turn, forwarded warranty claim forms to Veratile for credit. Each time the tractor was taken to Clanton, it was repaired and left the shop operating properly. A few smaller problems were taken care of at the Belcher farm.
The fifth and last time the tractor broke down, Belcher refused to take it to Clanton for repairs. He continued to operate the tractor until the front and rear spindles broke. The tractor was in this condition at the time of trial.
Belcher brought suit against the defendants, seeking rescission of the contract for the sale of the tractor, alleging breach of warranty by Versatile and substantial impairment of the value of the tractor. As indicated, after hearing all the evidence, the trial court rendered a judgment in favor of the defendants and awarded IHCC $30,559.98.
Belcher alleges on appeal that the trial court erred by disregarding facts in evidence and by misapplication of the law of warranty. Belcher also alleges error on the part of the trial court in sustaining certain objections made during Belcher's *Page 915 
cross-examination of Versatile's expert witness.
The Alabama Code clearly allows a seller to limit his warranty. Ala. Code 1975, § 7-2-316. The Versatile warranty was limited to the repair and replacement of defective or nonconforming parts and was structured in accordance with § 7-2-316. This section provides that express warranties may be limited by putting the limitations in writing, by using the word "merchantability," and by making the writing conspicuous. The Versatile warranty was prominently displayed on the inside cover of the owner's manual opposite the table of contents.
This Court has held that a contractual limitation of damages will not be allowed where the circumstances cause an exclusive or limited remedy to fail of its essential purpose or where to allow such limitation or exclusion would be unconscionable. Volkswagenof America, Inc. v. Harrell, 431 So.2d 156 (Ala. 1983). We have also held that, if a jury finds that the limited warranty has "failed of its essential purpose," it may then award damages under the general remedy provisions of the Uniform Commercial Code. Winchester v. McCulloch Brothers Garage, 388 So.2d 927, 928
(Ala. 1980). The facts in the present case do not warrant the application of either of these conclusions.
The record also reveals that Versatile honored this warranty, and that each time the tractor was taken to Clanton for repairs, it was repaired, defective parts were replaced, and the tractor was returned to good working order. Efforts to "make right" the tractor by repairing it were not stopped until Belcher himself refused to bring the tractor to Clanton for repairs.
In addition, the warranty warns that the alteration or the addition of equipment not manufactured for installation on Versatile equipment, without the prior approval of Versatile, will void the warranty. Belcher made several unauthorized alterations to the tractor. He welded brackets on the buckets of the front end loader and periodically installed forks in the brackets for moving rolls of hay. In order to counterbalance the tractor when hay was on the forks, Belcher placed additional weight, totalling approximately 400 pounds (200 pounds on each side), on the rear of the tractor. Additionally, Belcher put water in the tires of the tractor. Versatile authorized the placing of up to a total of 800 pounds of "ballast," normally water, in the rear tires only. The record indicated that if the tires were filled with water, each one would weigh from 700 pounds to 1,000 pounds. It is not clear how much water Belcher put into each tire, but from the evidence the trial court found that water was put into all four tires, not just the rear ones.
These alterations were made without the consent or knowledge of Versatile and clearly violated the warranty. The record shows that prior to the time of the purchase of the tractor, Belcher had a copy of the owner's manual, which contained the warranty, and had ample opportunity to read that warranty. He disregarded the terms of the warranty, however, and made the alterations.
Versatile's expert witness credited the repeated failure of the spindles to improper maintenance of the tractor, in particular, the drop-box assembly. An examination of the tractor and the spindles themselves showed scarring, or abnormal wearing at the breaking point, which can be attributed to the vibrations and undulations of a loose drop-box. Belcher testified that the nuts on the drop-box bolts were tightened by someone's putting a pipe on the wrench and pulling as hard as he could, even though the owner's manual provided instructions and a specific torque for those nuts. The Versatile expert stated that the procedure Belcher employed could stretch the threads on the bolts and cause them to loosen. Any improper movement of the faces or plates in the drop-box or any flexing of the spindles could cause the type of damage that led to the failure of the spindle. Additionally, the expert testified that the solenoid malfunction was caused by improper adjustment. *Page 916 
This Court will not disturb a decision of a trial judge unless the evidence is insufficient to support it or the decision is plainly erroneous, palpably wrong, and manifestly unjust. Chismv. Hicks, 423 So.2d 143 (Ala. 1982). A presumption of correctness is accorded the trial judge's finding on disputed evidence.Silverman v. Charmac, Inc., 414 So.2d 892 (Ala. 1982). Considering the record in light of this rule of review, we cannot say that the trial judge's decision was unsupported by credible evidence, or that it was plainly erroneous and manifestly unjust.
The trial court visually inspected the tractor, and portions of the examinations of Belcher and Versatile's expert witness were conducted at the scene. Where such an inspection has taken place, there is an even greater presumption of correctness in favor of the trial court's ruling. Town of Helena v. Country Mobile Homes,Inc., 387 So.2d 162 (Ala. 1980).
Belcher also alleges that the trial court committed error by sustaining certain objections made during his cross examination of Versatile's expert witness. During this cross examination, Belcher attempted through the use of hypothetical questions to elicit certain testimony.
The first question to which Belcher addresses himself involves speculation on the part of the witness. Belcher's attorney was attempting to lead the witness through a series of speculative questions regarding potential repairs he would make of bolts on drop-boxes if recommended repair and maintenance work did not solve the problem. The specific question to which objection was sustained involved that the witness would suggest if a locking tab and the substance Locktite did not keep certain bolts from vibrating loose. There was no evidence that a locking tab or Locktite had ever been used on any of the drop-box bolts by Belcher and, hence, the question was entirely speculative and was not based on any facts in evidence. As noted by C. Gamble,McElroy's Alabama Evidence § 136.01 (3d ed. 1977):
 "The trial court has the discretion reasonably to limit the range of cross-examination in respect to collateral and irrelevant matters or with respect to matters that unnecessarily consume time in the trial of the case. It has been said, in regard to the trial court's right to limit cross-examination, that a trial is not meant to be an eternal phenomenon."
The next two questions asked of the witness by Belcher's attorney, to which objections were sustained, also involved a hypothetical question, one based on the premise that the tractor was inoperable for 60% of the year. Hypothetical questions must be based upon facts which have been introduced into evidence or which will be placed into evidence at a later time during the trial. C. Gamble, McElroy's Alabama Evidence § 130.01 (3d ed. 1977). The objections made by defense counsel to Belcher's question regarding the figure of 60% downtime was based on the fact that there was no testimony setting up the figure of 60% as a period of time in which the tractor was inoperable.
The final question objected to by defense counsel was a similar hypothetical in which Belcher's attorney injected the phrase "more than half the time" as the time in which the tractor was inoperable, as opposed to the 60% figure used earlier.
The trial court sustained timely objections to those questions. We agree with the trial judge's ruling.
The judgment of the trial court is due to be, and it hereby is, affirmed. Because we affirm the trial court's judgment, the issues presented in the appeal by IHCC become moot.
AFFIRMED.
TORBERT, C.J., and MADDOX, JONES and BEATTY, JJ., concur.
[1] Various cross-claims and counterclaims were filed by the defendants, none of which are relevant to these appeals.
[2] The final judgment of the trial court reads in pertinent part:
 "Belcher has breached the terms of his agreement with IHCC to pay for the Tractor. IHCC may therefore proceed to enforce the terms of its agreement, including without limitation the acceleration of the payment of the indebtedness, the taking of possession of the Tractor, and having it repaired and sold. Any surplus received from a sale shall be returned to Belcher and he shall be liable to IHCC for any deficiency. IHCC may also proceed against Clanton Tractor in accordance with the terms of the sales contract.
 ". . . To the extent that Clanton Tractor may become liability to IHCC, Clanton Tractor may proceed against Belcher. Clanton Tractor may assert any of the rights or remedies it has under the sales contract." *Page 917