Mary Ellen Windsor filed suit in the Montgomery County Circuit Court against James Collins, seeking damages for an alleged breach of the terms of the lease of a commercial building owned by Windsor. The trial court, after hearing testimony and viewing the premises, entered judgment in favor of Windsor for $7,781 plus attorney *Page 1206 
fees and costs. Subsequent to the entry of judgment, Windsor filed a motion to amend the judgment and Collins filed a motion for new trial or, in the alternative, to amend the judgment. The court denied all post-judgment motions. Collins appeals, and Windsor cross-appeals, from the trial court's judgment. We affirm.
Windsor leased the building to Collins for a term beginning March 1, 1973, and ending February 1, 1978, with a renewal option for five years. The lease was renewed through December 1, 1983, although Windsor continued to accept rent from Collins after that date. The lease provided that the lessee agreed "to permit no waste of the property, but, on the contrary to take good care of same; and upon termination of this lease, to surrender possession of same without notice, in as good condition as at the commencement of the term, or as they may be put in during the term, as reasonable use and wear thereof will permit."
Collins operated a coin laundry in the leased building, which was the use of the premises immediately prior to Collins's occupancy. In 1979, Collins closed the laundry, but kept his equipment in the building and continued to pay rent as provided in the lease. Collins finally vacated the building on April 27, 1984.
In her complaint, Windsor alleged that Collins breached the terms of the lease by permitting waste to occur to the property; by failing to give notice of the need for repairs to the roof of the building; and by failing to surrender possession of the premises in as good a condition as at the commencement of the lease. According to the testimony of Windsor, the building was "like new" at the beginning of the lease term but at the time Collins vacated the building in early 1984 "was in shambles." Although Windsor claimed damages totaling $18,491 for restoration of the building, the trial court awarded her damages totaling $7,781.
Collins claims that the trial court incorrectly applied the present cost of repair as the measure of damages under the lease. It is Collins's contention that the diminution in value of the premises is the proper measure of damages in this case because the cost of repair exceeds the loss in value of the premises. Collins cites Lowe v. Morrison, 412 So.2d 1212 (Ala. 1982), in support of that contention. The Lowe Court stated that "[t]he proper measure of damages, where correction of defects would amount to economic waste, is the diminution in value of the house as constructed from the value it would have had if it had been constructed in a workmanlike manner." 412 So.2d at 1213-14. The Lowe case involved allegedly defective construction of a house, and damages were sought for breach of the construction contract and for breach of an implied warranty of workmanlike performance in execution of the contract. The instant case presents different circumstances, as Windsor seeks damages for her lessee's failure to surrender possession of the building at the end of the lease term in as good a condition as at the beginning of the term, except for reasonable use and wear thereof. This is not a situation in which correction of defects would amount to waste, but rather it is one in which repairs to the building would put the premises in the condition contemplated by the parties in the lease agreement.
We think the trial court's use of the cost of repairs as the measure of damages was proper in this case. The trial court based its ascertainment of the measure of damages on the following:
 "Should the injury to the real property be temporary, the measure of damages, as a general rule, is the loss of rental value during the time of the temporary injury plus an amount necessary to repair the injuries and place the land in the condition it was in immediately preceding the injury."
C. Gamble D. Corley, Alabama Law of Damages § 7-3, at 42 (1982). The trial court's determination of the measure of damages is supported by additional legal authority. InInternational Tool Engineering Co. v. Sullivan, 389 So.2d 138
(Ala.Civ.App. 1980), the Alabama Court of Civil Appeals upheld a judgment allowing the landlord to recover the cost of repairs *Page 1207 
to a leased building that had been left by the tenants in a bad state of repair. The court found the judgment to be "properly responsive to the correct measure of damages." 389 So.2d at 140. A general rule has been stated as follows: "[W]here an action is brought after expiration of a term for breach of a lessee's covenant to keep the premises in repair or to surrender them in good repair or in the same condition as when leased, the measure of damages is the reasonable cost of putting the demised premises into the required state of repair or the condition contemplated by the covenant." Annot. 80 A.L.R.2d 1001 (1961). In the present case, Collins had agreed to surrender the building at the end of the term in as good a condition as at the beginning of the term. The cost of repairs is the proper measure of damages, as this will return the building to the condition contemplated by the terms of the lease.
Collins makes the additional argument that the award of damages to Windsor is contrary to the evidence presented to the trial court. Under our ore tenus standard of review, the findings of the trial court are presumed correct if based upon competent evidence. Such findings will not be disturbed on appeal if supported by the evidence or any reasonable inference therefrom, unless they are plainly and palpably erroneous and manifestly unjust. Dennis v. Dobbs, 474 So.2d 77 (Ala. 1985);First Alabama Bank of Montgomery, N.A. v. Coker, 408 So.2d 510
(Ala. 1982); Knapp v. Knapp, 392 So.2d 527 (Ala. 1980). Collins points out that the presumption that normally accompanies the judgment in an ore tenus case is rebuttable where the proof at trial is insufficient to support the material allegations on which the suit is brought and judgment rendered. First AlabamaBank of Montgomery, N.A. v. Coker, supra; Cougar Mining Co. v.Mineral Land Mining Consultants, Inc., 392 So.2d 1177 (Ala. 1981). With these rules of review in mind, we have carefully considered the evidence of record. We find that the evidence is sufficient to support the judgment of the trial court. We are unable to say that the trial court's decision was plainly erroneous and manifestly unjust. The presumption in favor of the trial court's judgment is strengthened in this case because the trial judge made a visual inspection of the building that had been leased to Collins. Smith v. Smith, 482 So.2d 1172
(Ala. 1985); Belcher v. Versatile Farm Equipment Co.,443 So.2d 912 (Ala. 1983); Town of Helena v. Country Mobile Homes, Inc.,387 So.2d 162 (Ala. 1980).
Collins also argues that the trial court erred in failing to grant his motion for new trial on the ground that the judge should have disqualified himself from hearing this case. Subsequent to the entry of judgment, Collins learned that Mary Jacquline Windsor, the daughter of the plaintiff in this action, worked in an office located within the trial judge's suite of offices in the Montgomery County Courthouse. Collins asserts that, under the provisions of Canon 3C(1), Alabama Canons of Judicial Ethics, the parties and the public might reasonably question the trial judge's impartiality.
Canon 3C(1) provides in pertinent part:
 "A judge should disqualify himself in a proceeding in which his . . . impartiality might reasonably be questioned. . . ."
Under Canon 3C(1), "recusal is required where facts are shown which make it reasonable for members of the public, or a party, or counsel opposed to question the impartiality of the judge.Miller v. Miller, 385 So.2d 54, 55 (Ala.Civ.App. 1980);Wallace v. Wallace, 352 So.2d 1376, 1379 (Ala.Civ.App. 1977). However, recusal is not required by a mere accusation of bias unsupported by substantial fact. Miller v. Miller,385 So.2d 54, 55 (Ala.Civ.App. 1980); Taylor v. Taylor, 359 So.2d 395,398-399 (Ala.Civ.App. 1978)." Acromag-Viking, Inc. v.Blalock, 420 So.2d 60, 61 (Ala. 1982).
Mary Jacquline Windsor testified at the hearing on Collins's motion for new trial. She testified that she is the daughter of Mary Ellen Windsor, the plaintiff in this case. Her testimony reveals that she was employed by the Montgomery Police Department as a court liaison officer, which involved working with the district attorney's office and with all the judges. Her *Page 1208 
office was located in the Montgomery County Courthouse, within Judge Charles Price's suite of offices. Although Mary Jacquline Windsor testified that she saw Judge Price on an "every workday basis" and that she talked with his court personnel on a regular basis, she also testified that she knew all of the other judges in the courthouse and most of their personnel.
The following testimony was also given by Mary Jacquline Windsor:
 "Q. Did you discuss the fact that your mother had a case pending in Judge Price's Court with any of Judge Price's personnel prior to the trial?
"A. No, sir.
 "Q. And are you sure of that? "A. Uh-huh (positive response.)
 "Q. Okay. Did you discuss the fact that Judge Price was trying your mother's case with Judge Price prior to the trial?
"A. No, sir.
". . . .
 "Q. Did you ever make Judge Price aware of your relationship to the plaintiff in this case?
"A. No, sir."
The record also contains a statement by Judge Charles Price explaining the extent of his knowledge of the situation. Judge Price noted that the role served by the police liaison officer is the same for him as for every other judge. He further stated as follows:
 "At no time prior to this trial did I even know [Mary Jacquline Windsor's] last name. I called her Jackie. I didn't know her last name. At no time prior to the trial did she or any of my personnel tell me that her mother was . . . the plaintiff in this case. At no time during the trial, during the time of taking evidence did anyone tell me that . . . the plaintiff was Jackie's mother. When all of the evidence was in and we got ready to go out to view the premises, my court reporter . . . drove my law clerk and myself out there. I think prior to going out there, my law clerk asked me: 'Did you know that was Jackie's mother?' . . . That's the only comment that was made. At no time since the trial has Jackie or Ms. Windsor ever said anything to me about this case or about her mother or how much money her mother was going to get or anything like that."
Under the Canon 3C(1) recusal test adopted by this Court, a judge should disqualify himself if a person of ordinary prudence in the judge's position, knowing all of the facts known to the judge, would find that there is a reasonable basis for questioning the judge's impartiality. In re Sheffield,465 So.2d 350 (Ala. 1984). Applying that test in this case, we do not believe the trial judge's impartiality can reasonably be questioned, as we deem the evidence insufficient to support the contention that the trial judge was biased.
Windsor has filed a cross-appeal, claiming that the trial court should have allowed damages covering the cost of replacing wiring, replacing the water heater, and repairing the ceiling tiles and insulation in the building that had been leased to Collins. We cannot agree that the trial court committed reversible error in failing to award damages to Windsor for these items. Evidence was presented which tended to show that the wiring and the water heater were placed in the building by Collins, and that these items were his personal property. We do not agree with Windsor's assertion that the trial court's failure to award damages for replacement of ceiling tiles and insulation is inconsistent with its award of damages for repair of the roof and floor tiles. The trial court not only heard testimony concerning the condition of the building, but it also made a visual inspection of the premises. Under our ore tenus rule, we find sufficient evidence to support the findings of the trial court.
Accordingly, the judgment of the trial court is affirmed.
AFFIRMED.
TORBERT, C.J., and JONES, SHORES and ADAMS, JJ., concur. *Page 1209